UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES WHITE,                                    )          Case No. 1:10CV23
                                                  )
                         Petitioner,              )          JUDGE SOLOMON OLIVER, JR.
                                                  )
        v.                                        )          Magistrate Judge George J. Limbert
                                                  )
KEITH SMITH[1], Warden,                           )
                                                  )
                         Respondent.              )          **Report and Recommendation**
                                                  )          **of Magistrate Judge**
                                                  )
                                                  )

        ON January 6, 2010, Petitioner Charles White ("Petitioner") filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged

constitutional violations that occurred as a result of his Stark County, Ohio Court of Common Pleas

conviction for four counts of Aggravated Robbery in violation of Ohio Revised Code (O.R.C.) §

2911.01, four counts of Kidnapping in violation of O.R.C. § 2905.01, and one count of having a

weapon under a disability in violation of O.R.C. §2923.13.  ECF Dkt. #1, ECF Dkt. #5, Ex. 2, 8.

On March 31, 2010, Respondent Keith Smith ("Respondent") filed an answer/return of writ.  ECF

Dkt. #5.  On May 28, 2010, Petitioner filed a traverse.  ECF Dkt. #8.

        For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the

petition in its entirety with prejudice:

---

[1]     Petitioner is now housed at Mansfield Correctional Institution, where Terry Tibbals is the warden.
*See http://www.drc.ohio.gov/OffenderSearch/Search.aspx* (search for 520252);
*http://www.drc.ohio.gov/Public/manci.htm.*  "[T]he default rule is that the proper respondent is the
warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla,* 542 U.S. 426, 435
(2004). Accordingly, the Petition should be amended to name Terry Tibbals as respondent.

## I.    SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

{¶ 2} In 2006, White was charged with seven counts of aggravated robbery, seven counts of kidnapping, and one count of having a weapon while under disability. The aggravated robbery and kidnapping counts contained one- and three-year firearm specifications.

{¶ 3} The matter proceeded to a jury trial except for the weapon under disability count, which was tried to the bench. At the close of the State's case, the trial court dismissed three of the aggravated robbery counts and three of the kidnapping counts. The jury convicted White of the remaining charges with the accompanying firearm specifications, and the trial court found him guilty of the weapon under disability charge.

{¶ 4} The trial court sentenced White to ten years in prison for aggravated robbery, to run concurrent with seven years for kidnapping and ten months on the weapon charge. The court also sentenced White to a mandatory three years for the firearm specifications, to run consecutively to the underlying charges, for a total sentence of thirteen years.

{¶ 5} The following facts were adduced at trial.

{¶ 6} On October 18, 2003, Donesia Justice ("Justice") was working at the hair salon she owned on Euclid Avenue in Cleveland. Shortly before noon, two men entered the busy salon, brandishing handguns. One man entered through the front door and the other through the back door. There were approximately thirty employees and customers in the salon at the time. The two men ordered the customers to the back of the salon and told them to lie on the floor.

{¶ 7} Justice activated the security alarm, and the gunman who had entered through the back door threatened to shoot her because she had pulled the alarm. The two men proceeded to search the victims and to take their purses, money, and other valuables. The men then fled.

{¶ 8} A few days after the robbery, Justice was able to assist the Cleveland police in developing a composite sketch of the gunman who had entered through the back door. Little progress was made on the case until 2005, when Justice contacted Cleveland police claiming to have seen a photo of the gunman on the news.

{¶ 9} Justice subsequently picked White out of a photo array. Necha Scott ("Scott"), a salon employee who was also robbed, was able to identify White as the man who had entered through the back door of the salon. The detective showed the photo array to three other women who were in the salon at the time of the robbery, but they were unable to identify White.

> {¶ 10} At the close of the State's evidence, the trial court granted White's motion for acquittal for counts that related to three alleged victims who did not testify at trial.

ECF Dkt. #5, Ex. 12; *State v. White*, No. 88491, 2007 WL 1776470 at ¶¶2-10, (Ohio App. 8th Dist. 2007), unreported.

## II.      PROCEDURAL HISTORY

### A.      State Trial Court

On May 10, 2006, the Cuyahoga County, Ohio prosecuting attorney filed an indictment charging Petitioner with fifteen counts, including: seven counts of Aggravated Robbery in violation of O.R.C. § 2911.01 (Counts 1 through 7), seven counts of Kidnapping in violation of O.R.C. § 2905.01 (Counts 8 through 14)[2], and one count of having a weapon under a disability in violation of O.R.C. §2923.13 (Count 15).  ECF Dkt. #5, Ex. 2.  Each aggravated robbery and kidnapping count included a one-year firearm specification pursuant to O.R.C. §2941.141, and a three-year firearm specification pursuant to O.R.C. §2941.145.

On June 19, 2006, the case proceeded to a jury trial.  ECF Dkt. #5, Ex. 5.  Petitioner waived the jury as to Count 15, electing instead to have the trial judge consider the weapon under disability charge.  ECF Dkt. #5, Ex. 5, 6.  On June 21, 2006, the trial judge granted Petitioner's motion for acquittal as to Counts 3, 4, 6, 10, 11, and 13.  ECF Dkt. #5, Ex. 7.  The foregoing charges were dismissed because the victims named in those counts did not testify at trial.  On June 22, 2006, the jury found Petitioner guilty of Counts 1, 2, 5, 7, 8, 9, 12 and 14.  ECF Dkt. #5, Ex. 8.  The trial judge found Petitioner guilty of Count 15.  *Id.*  The judge sentenced Petitioner to an aggregate term of 13 years of imprisonment, three years on the firearms specifications, ten years on each count of aggravated robbery and kidnapping to be served concurrently, fifteen months on the weapon under disability charge to be served concurrently with the aggravated robbery and kidnapping charges, and three years on the firearm specifications to be served consecutively to the sentences on the other charges.  *Id.*

---

[2]      The heading of the page of the indictment charging Count 8 indicates that Counts 7 and 8 charge Aggravated Robbery in violation of O.R.C. 2911.01; however, the text of the indictment indicates that Count 8 was an alleged Kidnapping offense in violation of O.R.C. §2905.01.

**B.** **Direct Appeal**

On July 21, 2006, Petitioner filed a notice of appeal to the Ohio Court of Appeals for the Eighth District.  ECF Dkt. #5, Ex. 9.  Petitioner filed a brief in support of his direct appeal, raising the following assignments of error:

I.    APPELLANT WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OR LAW WHERE HIS CONVICTIONS ARE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE

II.   APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO OFFER EXPERT TESTIMONY ON EYEWITNESS IDENTIFICATION

III.  THE TRIAL COURT ERRED AT SENTENCING BY FAILING TO MERGE THE KIDNAPPING CHARGES WITH THE AGGRAVATED ROBBERY COUNTS AND BY IMPOSING CONCURRENT SENTENCES FOR THE KIDNAPPING CHARGES

IV.   THE TRIAL COURT ERRED WHEN IT RULED ON MR. WHITE'S MOTION PURSUANT TO CRIM. R. 29 OUTSIDE OF MR. WHITE'S PRESENCE IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENTS AND IN VIOLATION OF CRIM. R. 43.

V.    APPELLANT WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW  WHEN HE WAS SENTENCED UNDER A JUDICIALLY ALTERED, RETROACTIVELY APPLIED, AND SUBSTANTIALLY DISADVANTAGEOUS STATUTORY FRAMEWORK

ECF Dkt. #5, Ex. 10.

On July 2, 2007, the Ohio Court of Appeals affirmed the trial court's judgment of conviction pertaining to the aggravated robbery and weapons under disability charges. ECF Dkt. #5, Ex. 12. However, the court sustained Petitioner's third assignment of error related to his kidnapping convictions.  *Id*. at ¶18.  The court determined that the aggravated robbery and kidnapping were committed with a single animus, and should have been merged.  *Id*.  at ¶¶17-18.

**C.** **Resentencing**

On remand from the Ohio Court of Appeals, the Cuyahoga County Court of Common Pleas adjudged Petitioner guilty of Counts 1, 2, 5, 7, and 15, and sentenced him to an aggregate term of 13 years of imprisonment.  ECF Dkt. #5, Ex. 13.  Pursuant to the appellate court's mandate, the trial court vacated the indictment as it related to the kidnapping charges in Counts 8, 9, 12, and 14.  *Id*.

-4-

**D.     Supreme Court of Ohio**

On August 9, 2007, Petitioner filed a notice of appeal to the Supreme Court of Ohio from the July 2, 2007 judgment of the Ohio Court of Appeals.  ECF Dkt. #5, Ex. 14.  On August 9, 2007, Petitioner filed a brief in support of jurisdiction, raising the following propositions of law:

> Proposition of Law No. 1:     TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BECAUSE HE FAILED TO OFFER EXPERT TESTIMONY ON EYEWITNESS IDENTIFICATION IN A CASE WHERE SUCH TESTIMONY WOULD HAVE CHANGED THE OUTCOME OF THE CASE

> Proposition of Law No. 2:     APPELLANT WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW WHEN HE WAS SENTENCED UNDER A JUDICIALLY ALTERED, RETROACTIVELY APPLIED, AND SUBSTANTIALLY DISADVANTAGEOUS STATUTORY FRAMEWORK

ECF Dkt. #5, Ex. 15.  On November 21, 2007, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #5, Ex. 16.

**E.     Post-conviction Petition**

On February 26, 2007, prior to filing a direct appeal in the Supreme Court of Ohio, Petitioner filed a post-conviction petition in the Cuyahoga County, Ohio Court of Common Pleas.  ECF Dkt. #5, Ex. 17.  Petitioner raised the following claims for relief:

> I.     TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.

>> A.     FAILURE TO INVESTIGATE, INTERVIEW, AND CALL EYEWITNESSES.

>> B.     FAILURE TO CONSULT AN EXPERT IN THE FIELD OF EYEWITNESS IDENTIFICATION AND PRESENT AVAILABLE EVIDENCE THAT WOULD HAVE CALLED INTO QUESTION THE VALIDITY AND RELIABILITY OF THE EYEWITNESS IDENTIFICATION OF MR. WHITE AS THE ROBBER.

> II.    IN LIGHT OF THE NEW EVIDENCE MR. WHITE'S CONVICTION IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF FIFTH,

-5-

> EIGHT AND FOURTEEN [SIC] AMENDMENTS OF THE UNITED STATES CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.
>
> III.    THE STATE VIOLATED ITS DUTY UNDER *BRADY V. MARYLAND* TO DISCLOSE EXCULPATORY INFORMATION THAT EYEWITNESSES COULD [SIC] DID NOT IDENTIFY CHARLES WHITE AS ONE OF THE SALON'S ROBBERS

*Id*.  On March 7, 2007, the state filed a Motion in Opposition to Petition for Post Conviction Relief. ECF Dkt. #5, Ex. 18.  Petitioner filed a response to the state's motion and he filed a supplement to his petition, appending an affidavit from an expert witness.  ECF Dkt. #5, Ex. 19, 20.  The state filed a response.  ECF Dkt. #5, Ex. 21.

On September 11, 2007, the Cuyahoga County Court of Common Pleas denied Petitioner's post-conviction petition based upon Petitioner's failure to raise his claims at trial or on direct appeal. ECF Dkt. #5, Ex. 22.

On October 11, 2007, Petitioner filed a notice of appeal.  ECF Dkt. #5, Ex. 23.  Thereafter, he filed an appellate brief in the Ohio Court of Appeals for the Eighth District and raised the following assignment of error:

> I.    THE TRIAL COURT ERRED WHEN IT DISMISSED THE PETITION FOR POST-CONVICTION RELIEF ON GROUNDS THAT THE PETITIONER'S CLAIMS WERE BARRED BY THE DOCTRINE OF RES JUDICATA.

ECF Dkt. #5, Ex. 24.  On September 2, 2008, the appellate court affirmed the trial court's denial of the post-conviction petition, however, the appellate court, in addition to affirming the decision on *res judicata* grounds, also addressed the merits of the petition.  ECF Dkt. #5, Ex. 26.

On October 17, 2008, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #5, Ex. 27.  In his contemporaneously-filed memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> Proposition of Law No. 1:    A PETITION FOR POST-CONVICTION RELIEF, SUPPORTED BY EVIDENCE THERETOFORE OUTSIDE THE RECORD, WHICH RAISES A COGNIZABLE CLAIM OF CONSTITUTIONAL ERROR MAY NOT BE DISMISSED ON RES JUDICATA GROUNDS

> Proposition of Law No. 2: DUE PROCESS REQUIRES THAT THE POST-CONVICTION PROVISIONS THE GENERAL ASSEMBLY ENACTED ALLOW INDIVIDUALS CHALLENGING THE VALIDITY OF THEIR CONVICTIONS A MEANINGFUL OPPORTUNITY TO DO SO. WHERE THE LAW IS CONSTRUED IN SUCH A WAY THAT IT FRUSTRATES THE ABILITY TO PRESENT SUCH COGNIZABLE CONSTITUTIONAL CHALLENGES IT VIOLATES THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

ECF Dkt. #5, Ex. 28.

On February 4, 2009, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. ECF Dkt. #5, Ex. 29.

**F.    28 U.S.C. § 2254 Petition**

On January 6, 2010, Petitioner filed the instant petition for a writ of habeas corpus. ECF Dkt. #1. Petitioner has raised the following grounds for relief:

> GROUND ONE:   Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when his counsel failed to offer expert testimony on eyewitness identification. Charles White received constitutionally ineffective assistance of counsel.
>
> GROUND TWO:   Petitioner received the ineffective assistance of trial counsel when his counsel failed to investigate, interview, and call eyewitnesses.
>
> GROUND THREE:   The State failed to disclose exculpatory information in violation of the Fourteenth Amendment.
>
> GROUND FOUR:   Petitioner was deprived of his liberty without due process when he was sentenced under a judicially-altered, retroactively applied, and substantially disadvantageous statutory framework.

ECF Dkt. #1. On March 31, 2010, Respondent filed a return of writ. ECF Dkt. #5. On May 28, 2010, Petitioner filed a traverse. ECF Dkt. #8.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default

and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Further, the Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)  whether the petitioner failed to comply with an applicable state procedural rule;

(2)  whether the state courts actually enforced the state procedural sanction;

(3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV. **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 6, 2010, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

-10-

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

-11-

    C.       The state court decision may be overturned only if:

           1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

           2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

           3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

           4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.       Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

    E.        Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

      Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

    (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.     ANALYSIS

### A. Ground One - Failure to offer expert testimony on eyewitness testimony

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential."  *Id*. at 689.  Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel.  *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief.  *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith*

-13-

*v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review.  See *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052; *Groseclose v. Bell*, 130 F.3d 1161, 1164 (6th Cir.1997) ("An ineffective assistance of counsel claim presents a mixed question of law and fact, for which both the state-court and district-court determinations are subject to *de novo* review by this court.").  As a consequence, they are not findings of "historical facts" that are subject to the Section 2254(e)(1) presumption of correctness for state court factual findings.  *McGhee v. Yukins*, 229 F.3d 506, 513 (6th Cir.2000).

As a matter of initial concern, Respondent argues that Petitioner procedurally defaulted on his first claim because he did not offer any extrinsic evidence of ineffective assistance of counsel in his direct appeal.[3]  Petitioner attached to his petition for post-conviction relief the affidavits of Tammy Chappell and Alischa Hickman, two victims of the robbery at the salon, a copy of an article presented by the Annual Review of Psychology which challenged the reliability of eyewitness testimony, the police report, the composite sketch of the perpetrator in the back of the salon, Petitioner's Department of Motor Vehicles photo, the two photo arrays, and later submitted the affidavit of Psychologist, Dr. Solomon Fulero, which challenged the reliability of eye-witness testimony.  Relying on the Ohio Supreme Court's decision in *State v. Madrigal*, 87 Ohio St.3d 378,

---

[3]     More specifically, Respondent writes:

[Petitioner's] development of this claim in his petition for post-conviction relief does not alter he [sic] fact that [Petitioner] failed to fairly present the claim to the state courts at the first available opportunity.  The state appellate court determined that the supplemented claim was "barred by res judicata." (Exhibit 26 at 6.)  Thus, the formulation of the claim raised in [Petitioner's] petition for post-conviction relief has been procedurally defaulted for the purposes of federal habeas corpus review.

ECF Dkt. #5, Answer/Return of Writ at p. 59 (internal citations omitted).

-14-

2000-Ohio-448, 721 N.E.2d 52, Respondent argues that Petitioner's failure to include the foregoing evidentiary materials in his direct appeal constitutes procedural default of his ineffective assistance of counsel claims.

To the contrary, the Eighth District Court of Appeals in the direct appeal recognized that the type of ineffective assistance of counsel claim asserted by Petitioner in his direct appeal is more properly raised in a post-conviction petition for relief for the very reason that the material necessary to support his claim is not a part of the trial record.  The Eighth District wrote:

> The [Supreme Court in *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52,] stated that "resolving this issue in [the defendant's] favor would be purely speculative. Nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record * * *. Such a claim is not appropriately considered on a direct appeal." Id. at 390-391, 721 N.E.2d 52; see also *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150.

The Sixth Circuit rejected a similar procedural default challenge in *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir.2004):

> In this case, when the Ohio Court of Appeals declined to reach the merits of Clinkscale's ineffective assistance claim on direct appeal, it did so because of its preference that the claim be raised in a post-conviction motion, not because of Clinkscale's failure to comply with a procedural rule.  Under Ohio law, claims alleging ineffective assistance of trial counsel are permitted to be raised on direct appeal, see *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), and Clinkscale properly took advantage of that opportunity.  The Ohio Court of Appeals' decision denying relief does not even mention an applicable procedural rule, let alone "clearly and expressly state [ ] that its judgment rests on a state procedural bar." *Frazier* [*v. Huffman*, 343 F.3d 780, 791 (6th Cir.2003)(quoting *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038(1989).] Therefore, not even the first *Maupin* procedural default factor is satisfied.

The same is true here. Consequently, Petitioner's failure to include extrinsic evidence in his direct appeal does not constitute procedural default of his ineffective assistance of counsel claims.

Turning to the merits, while decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, the failure to call witnesses or present other evidence may constitute ineffective assistance of council when it deprives a defendant of a substantial defense.  See *Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th

Cir.2004); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir.2002).  Even when making strategic decisions, counsel's conduct must be reasonable.  See *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

The Sixth Circuit recently observed  that "[n]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment."  *Perkins v. McKee*, 411 Fed.Appx. 822, 833 (6th Cir.2011)(unreported).  Furthermore, the Sixth Circuit has twice held that the failure of trial counsel to obtain an expert in eyewitness identification did not amount to ineffective assistance of counsel.  In *Dorch v. Smith*, 105 Fed. Appx. 650, 653 (6th Cir.2004), the Sixth Circuit upheld the Michigan Court of Appeals's conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner.  In *Tipton v. United States*, No. 96-5026, 1996 WL 549802, at *1-2 (6th Cir. September 26, 1996), the Court held that any allegedly ineffective assistance caused by counsel's failure to hir[e] an expert in eyewitness identification did not prejudice the petitioner within the meaning of *Strickland*.

However, in *Ferensic v. Birkett*, 501 F.3d 469, 483-84 (6th Cir.2007), the Sixth Circuit held that the habeas petitioner had been deprived of the right to present a defense when the trial court excluded petitioner's expert witness in eyewitness identification from testifying at the petitioner's trial as a discovery sanction for defense counsel's failure to timely provide a copy of the expert witness' report to the prosecution.  *Id.* at 480-82.  In so ruling, however, the *Ferensic* Court based its decision primarily on the exclusion of the expert's testimony, which resulted in the deprivation of the petitioner of a right to present a defense, not that petitioner had been deprived of the effective assistance of counsel.

Furthermore, in *Ferensic*, the jury sent a note to the trial judge during deliberations in which they stated that "[w]e would like to see the police report," and asked "[w]hat are our options if we

-16-

don't totally agree on a verdict." The *Forensic* Court wrote: "[W]e wish to emphasize just how significant the jury's note is to our analysis, because it distinguishes the present case from many others in which the erroneous exclusion of an expert witness on eyewitness identification might well be harmless." *Id.* at 483.

Finally, the *Forensic* Court distinguished the facts in that case from ineffective assistance of counsel claims:

> "Although the failure to retain an expert as an initial matter presents a somewhat different problem than the exclusion of an already retained expert, we recognize the tension that our holding today might appear to generate with *Dorch*, *Tipton*, and similar cases. We therefore limit our holding to the situation here where the record reflects the doubts of the jury itself as to the identification of the perpetrator. Our analysis, in other words, should not be read to imply that the exclusion of an eyewitness-identification expert in a state-court criminal trial-even if "arbitrary" or "disproportionate" within the meaning of *Rock* [*v. Arkansas*] -will always warrant relief on federal habeas corpus review."

*Forensic*, 501 F.3d at 484.

A review of the testimony offered at trial is essential to the determination of whether the failure to call an expert on eye-witness testimony denied Petitioner of a substantial defense in this case.  In the above-captioned case, two witnesses, Justice and Scott, identified Petitioner as the perpetrator from the back of the salon.  According to Justice's testimony, she noticed the perpetrator at the front door first, when he walked in with his gun drawn. Tr. at 236.  She immediately began moving toward the panic button for the alarm system installed in the back of the salon. As she edged along the wall of the salon toward the panic button, she discovered the perpetrator at the back of the salon.  Tr. at 238.  As she activated the panic button, the perpetrator in the back of the salon saw her and asked her if she was going to set off the alarm system.  Tr. at 239.  He threatened her life if she activated the alarm and he cursed at her.  He was approximately ten to twelve feet away from her when the altercation occurred.  Tr. at 240.  When he trained the gun on her, she put her hands up. She begged him to allow her to retrieve her daughter, who was sitting alone on the floor, but he refused and he continued to threaten her saying that she had better hope that the police did not appear.  Tr. at 242.

-17-

He then instructed her to sit in one of the chairs in the back of the salon.  During this time, the perpetrator at the front of the salon collected the purses and valuables belonging to the employees and the patrons of the salon.  Some of the ladies were sent into the bathroom, while others were ordered to stay on the floor.  Tr. at 243-44.  The perpetrator at the back of the salon continued to threaten to kill Justice if the police arrived.  Tr. at 245. After the perpetrator who entered the front door of the salon made his way to the back of the salon, both perpetrators fled the scene.  Justice estimated that the entire robbery lasted approximately five to seven minutes.  Tr. at 267.

Justice described the perpetrator at the back of the salon as "a well-groomed African male. Neat – neat mustache.  He had blemishes along his face. Between. . .five-six and five-seven, 145 pounds." Tr. at 247.  Five days later, Justice met with a police detective who created a composite of the perpetrator at the back of the salon.

More than two years later, in November of 2005, while tending to a patient at the nursing home where she worked, Justice saw a news bulletin about a robbery suspect.  She contacted  the detective assigned to the salon robbery and identified Petitioner, whose photograph appeared during the news bulletin, as the perpetrator from the back of the salon.  Tr. at 252.  She identified Petitioner from a photo array provided by the detective a few days later.

On cross-examination, she testified that she observed the perpetrator at the back of the salon for five to seven minutes.  Tr. at 269.  Justice never resolved the conflict between the estimated length of the robbery and the estimated time that she spent with the perpetrator at the back of the salon. She also conceded that, when she was asked if anything out of the ordinary occurred prior to the robbery,  she told the police that a boy who swept the salon for money came in that morning and asked her for work.  Tr. at 288.  She told him that it was too early in the day to sweep, but that he should return later in the day, and she said that she thought he was behaving suspiciously because he kept coming in and out of the salon.  Tr. at 288-90.  During Justice's cross-examination, Petitioner's trial counsel reviewed numerous 911 calls about the robbery, and underscored the fact that the various descriptions of the perpetrators were not consistent. Tr. 283-288. Finally, Petitioner's trial counsel asked Justice if her identification from the photo array was based upon her memory of

-18-

the robbery or the more recent memory of seeing Petitioner on the television.  Tr. at 300.

According to Scott, whose station was at the front of the salon, she noticed that the perpetrator who entered the front of the salon had a gun after he grabbed her ten year-old daughter and began to push her.  Tr. at 202-03.  She immediately "ran and got her daughters (she had a ten year old and a seven year old), and brought them over to [her]."  The perpetrator at the front of the store "pushed everybody; [Scott], Catherine [Crutchfield, a salon client], and [her] two daughters to the ground."  Tr. at 203.  While they were laying on the ground, he went through Scott's pockets as well as Catherine's pockets, then sent Scott, her children, and Crutchfield to the back of the salon.

When Scott got to the back of the salon, she noticed that Justice's daughter was sitting alone crying.  She asked the perpetrator in the back of the salon if she could pick up Justice's baby, and he permitted her to do so.  Tr. at 207.  Scott further testified that Justice was engaged in a verbal altercation with the perpetrator in the back of the salon, "[a]nd she kept fussing and fussing until she was able to get close enough to the alarm" to activate it.  Tr. at 207.  She described the perpetrator at the back of the salon as a "small build, light brown male" with a baseball cap and bad skin.  Tr. at 207.  She though his gun was silver, but was not certain.  Tr. at 209.  She testified that she was standing four feet from the perpetrator in the back of the salon and that the salon was well-lit.  Tr. at 208.

Scott viewed a photo array on December 5, 2005 and identified Petitioner as the perpetrator in the back of the salon.  Tr. at 211, 220.  She conceded on cross-examination that her photo identification of the Petitioner occurred 26 months after the robbery.  Tr. at 219.  She further conceded that the perpetrator in the back of the salon was standing behind her and she was turned talking over her right shoulder when she asked him if she could retrieve Justice's daughter from the floor.  Tr. at 225.  However, on re-direct examination she stated that she could see " his entire front."  Tr. at 224.

Later in the trial, Detective Stephen McGraw testified on cross-examination that he presented two photo arrays to Justice and Scott, as well as the other witnesses who testified at trial (Tammy

Chappell, Catherine Crutchfield, and Vicki McMillan), and "other witnesses[4] that didn't testify." Tr. at 342. He conceded that only Justice and Scott identified Petitioner as the perpetrator in the back of the salon.

Based upon the testimony elicited at trial, Petitioner has not overcome the presumption that his trial counsel chose not to call an expert to testify concerning the vagaries of eyewitness testimony as a matter of strategy, or that the decision deprived Petitioner of a substantial defense. Trial counsel's reliance upon the amount of time that lapsed between the robbery and the identification by Justice and Scott, as well as the numerous victims that could not identify Petitioner to challenge the reliability of the eyewitness identification of Petitioner was not unreasonable. Even if counsel's failure to call an expert witness could be considered objectively unreasonable, Petitioner has failed to show that there is a reasonable probability that, but for this alleged error, the outcome of the trial might have been different. This is not a case that hinged on the questionable testimony of a single eyewitness. Furthermore, Justice and Scott both spoke directly to the perpetrator in the back of the salon. Defense counsel's failure to call an expert on eyewitness testimony did not deprive Petitioner of a substantial defense, as defense counsel cross-examined eyewitnesses regarding their identification of Petitioner, and relied upon the inability of several other witnesses to identify him as the perpetrator at the back of the salon.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground One with prejudice.

---

[4]    Elisita Dillard and Necha Scott's daughter were the only witness who did not testify at trial that McGraw specifically identified among the "other witnesses that didn't testify." Tr. at 352.

**B.  Ground Two - Failure to investigate, interview, and call eyewitnesses**[5]

In *Strickland*, the Court outlined the parameters of what it described as "counsel's duty to investigate":

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052 (emphasis added). "Under this standard, counsel is required to conduct investigation at least to the extent necessary to determine that no further investigation is necessary."  *Storey v. Vasbinder*, 657 F.3d 372, 390-91 (6th Cir.2011).

Accordingly, federal courts have not hesitated in finding ineffective assistance under the *Strickland* standard when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client.  The Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the

---

[5] Respondent does not contend that Petitioner procedurally defaulted on his second ineffective assistance of counsel claim due to his trial counsel's failure to raise the claim on direct appeal, despite the fact that the trial court predicated its dismissal of claim in the petition for post-conviction relief on *res judicata*.  Although the Eighth District affirmed the dismissal of the petition on *res judicatata* grounds, the Eighth District, in the alternative, considered the merits of Petitioner's claim.

AEDPA is, by its own terms, applicable only to habeas claims that were "adjudicated on the merits in State court." 28 U.S.C. § 2254(d).  In reviewing the merits of federal constitutional claims that were not resolved by the state courts, courts apply pre-AEDPA law and review questions of law and mixed questions of law and the facts *de novo*. See *Maples v. Stegall*, 340 F.3d 433, 436–37 (6th Cir.2003).

In this case, the Ohio Court of Appeals, the last state court to review Petitioner's ineffective-assistance-of-counsel claims, reached the merits of those claims, in addition to concluding that they were barred by *res judicata*. Accordingly, to the extent that there exists findings of fact from the state court pertaining to Petitioner's second ineffective assistance of counsel claim, they must be presumed to be correct, subject to the rebuttable presumption in 28 U.S.C. §2254(e)(1).

-21-

Sixth Amendment.  See, e.g., *Ramonez v. Berghuis*, 490 F.3d 482 (6th Cir. June 18, 2007) (holding that defense counsel was constitutionally ineffective for failing to investigate three individuals present during the crime); *Towns v. Smith*, 395 F.3d 251, 258–59 (6th Cir.2005) (holding that defense counsel's failure to investigate getaway driver in robbery and felony murder trial constituted ineffective assistance); *Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th Cir.1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir.1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary").

Petitioner offered the affidavits of Tammy Chappell and Alischa Hickman in support of his state petition for post-conviction relief.  In their affidavits, both Chappell and Hickman aver that Petitioner was not the perpetrator in the back of the salon.  Chappell testified at trial on behalf of the state.  According to her trial testimony, she was standing at the shampoo area, in the back of the salon, when a man entered the back door.  She said "good morning, how you doing" and he responded, "fine, now get on the floor, bitch."  Tr. at 160.  Both Chappell and her client got down on the floor. Chappell was six feet from the perpetrator when he told her to get down on the floor. Tr. at 169.  Although she initially put her head down to pray, at some point, Chappell looked up at the perpetrator.  She witnessed an exchange between Justice and the perpetrator, where Justice asked him if she could walk over to her daughter and pick her up off the floor.  Chappell also witnessed a verbal altercation that occurred between Justice and the perpetrator after Justice pulled the alarm at the salon to alert to police.  Tr. at 171-72.

Although Chappell provided a general description of the layout of the salon, as well as a description of the perpetrator at the back of the salon – light brown skin, hat, nice-looking guy, had just been to the barber – Chappell was not asked to identify Petitioner at trial.  Seemingly as a consequence, Petitioner's trial counsel did not cross examine Chappell.  Tr. at 165. Moreover, as

-22-

stated earlier, Detective McGraw testified on cross-examination that Chappell was shown the second photo array, and she did not identify Petitioner as the perpetrator in the back of the salon.  Tr. at 353.

According to her affidavit, she "very clearly" saw the perpetrator in the back of the salon. Chappell Aff. at ¶5.  She averred that she looked at the man for such a long time that he told her to stop looking at him.  *Id.* at ¶6.  Neither Petitioner's trial counsel, nor any member of the defense team, ever approached Chappell regarding the identity of the perpetrator in the back of the salon. She avers, "I definitely would have told them that [Petitioner] was not one of the men that I saw in the salon that day."  *Id.* at ¶12.  The Eighth District Court of Appeals observed that Chappell's credibility is compromised because she testified at trial, but never approached either the state or the defense to inform them that Petitioner was not the perpetrator at the back of the salon.

According to Hickman's affidavit, she was able to see both perpetrators during the robbery. Hickman Aff. at ¶2.  She viewed several photographs immediately after the robbery, but was unable to identify either of the perpetrators.  *Id.* at ¶3.  Although she was contacted a few years after the robbery to look at some additional photographs, presumably in 2005, she never actually spoke to the police.  *Id.* at ¶4.  She knows Petitioner from the neighborhood where she was raised, and he was not one of the perpetrators.  *Id.* at ¶5.  She further states that if any one had shown her a picture of Petitioner she would have told them that he was not one of the perpetrators, who were much younger than him.  *Id.* at ¶6.  She was never contacted by an attorney or anyone acting on behalf of Petitioner. *Id.* at ¶8.

Respondent argues that the affidavits of Chappell and Hickman are merely cumulative, because there was considerable testimony at trial that several witnesses present at the salon during the robbery could not identify Petitioner.  Petitioner counters that the affidavits of Chappell and Hickman are not cumulative, because they establish that Petitioner was not the perpetrator in the back of the salon, not simply that Chappell and Hickman could not identify the perpetrator in the back of the salon.

Approximately thirty people were present in the salon when the robbery took place.  Thirteen victims were listed in the police report, including Chappell and Hickman.  There is no evidence in

-23-

the record to establish the extent of trial counsel's pretrial investigation in this case, as no affidavit from Petitioner or his trial counsel was provided, and the state court dismissed the petitioner without a hearing.  Furthermore, unlike other cases where ineffective assistance of counsel is predicated upon the failure to investigate a known witness, commonly a friend or associate who was present when the alleged crime was committed, *Ramonez*, *supra*, *Towns, supra*, or an alibi witness, *Clinkscale, supra,* the eye witnesses at issue in this case are two members of a much larger group of victims. In other words, this is not a case where there was only one eye witness, *Davis v. Lambert,* 388 F.3d 1052,1063-64 (7th Cir.2004), or Petitioner identified specific witness to be interviewed by his trial counsel,  *Stewart v. Wolfenbarger,* 468 F.3d 338, 356-357 (6th Cir.2006), but trial counsel failed to interview the witness.  Consequently, the facts in this case are distinguishable from the facts in the majority of case law granting habeas corpus due to trial counsel's failure to conduct a proper pretrial investigation.

Even assuming that Petitioner's trial counsel was deficient in failing to interview Chappell and Hickman, the averments in their affidavits fall short of establishing the prejudice element of *Strickland.*  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

As stated earlier, Chappell's testimony lacks credibility because she took the stand at trial and never told the prosecution or the defense that Petitioner was not the perpetrator in the back of the salon.  Hickman's affidavit states that she knew Petitioner from the neighborhood where she was raised, but she concedes that she is not a friend, and that he was much older than her. There is no indication of the last time she saw Petitioner prior to the robbery, in fact, she admits that she left the neighborhood at some time after the robbery and Petitioner's mother moved from the neighborhood a couple of years earlier.  Accordingly, Hickman's testimony, particularly when considered in light of the testimony of two witnesses who actually spoke to the perpetrator in the back of the salon, is insufficient to undermine confidence in the outcome of the trial.

While the outcome *may* have been different if Chappell and Hickman testified at trial, there is not a reasonable probability that the outcome would have been different. "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. . . .The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, __U.S. __, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Two with prejudice.

### C.  Ground Three: Alleged *Brady* Violation

Here, Petitioner asserts that "the prosecutor had a duty to inform [Petitioner] that four eyewitnesses (Elisita Dillard, Teona Grays, Aletha Acree, and Tammy Chappell) did not identify him as the robber who entered the back of the salon. To the extent that [Petitioner's] trial counsel was not made aware of this evidence, the State violated its duty under *Brady [v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]." ECF Dkt. #8, p. 1040.

*Brady* established that "the suppression by the prosecution of evidence favorable to an accused upon request[6] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. 1194. *Brady* does not grant broad discovery powers to the defendant, but is intended only to ensure that the defendant has access to impeachment evidence and evidence favorable to him, suppression of which would deprive him of a fair trial. *United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

---

[6]  In later cases, the Court eliminated the requirement for a defendant to request favorable information and stated that the constitutional duty to disclose is "triggered by the potential impact of favorable but undisclosed evidence. . ." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995); *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

"[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The *Strickler* Court summarized a "true" *Brady* violation as follows: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.  In *Strickler*, the Court's focus was on the third component, "whether petitioner has established the prejudice necessary to satisfy the 'materiality' inquiry." *Id.* at 282, 119 S.Ct. 1936.  To satisfy this requirement, the Court reiterated, the petitioner "must convince us that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Id. at 289, 119 S.Ct. 1936.

Moreover, "[n]o Brady violation occurs 'where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source.' " See *Workman v. Bell*, 178 F.3d 759, 767 (6th Cir.1998) (quoting *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.1991)), cert. denied, 528 U.S. 913, 120 S.Ct. 264, 145 L.Ed.2d 221 (1999). Likewise, the Fourth Circuit has held that "the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources," *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir.1990) (quoting *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir.1986)); and "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." Id. at 381, see also *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir.1988); *Lugo v. Munoz*, 682 F.2d 7, 9-10 (1st Cir.1982).

Here, the testimony at trial established that, other than Justice and Scott, no other witness had identified Petitioner as the perpetrator at the back of the salon.  McGraw conceded on cross-examination that neither Dillard nor Chappell identified Petitioner from the photo array.  Trial Tr., p. 352-354.  Earlier in his cross-examination,  he stated that he showed the photo array to Necha Scott's daughter, who was present in the salon the day of the robbery, who could not identify either

-26-

perpetrator, *Id.* at p. 341, as well as "other witnesses that didn't testify."  Moreover, the aggravated robbery and kidnapping charges relating to Dillard, Grays, Acree, Chappell were dismissed because "there was no testimony of any witnesses on those counts."  Trial Tr.,  p. 371.  Accordingly, not only was the information regarding the failure of any victim or witness, with the exception of Justice and Scott, available to Petitioner, but it was offered at trial to challenge the eye-witness testimony of Justice and Scott.  Furthermore, there is no evidence that the police knew that Chappell and Hickman would provide exculpatory evidence for Petitioner.  Neither Chappell or Hickman stated in their affidavits that they informed the prosecutor that Petitioner was not the perpetrator in the back of the salon.  Therefore, no *Brady* violation occurred.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Three with prejudice.

### D. Ground Four: Alleged Ex Post Facto Violation

Petitioner contends that the retroactive application of  *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), to his sentence, which resulted in greater-than-minimum and consecutive sentences without the findings previously required by Ohio Revised Code § 2929.14(B) and (E), violated the Due Process Clause limitation on ex post facto application of judicial decisions.

As the Ex Post Facto Clause binds a State's judiciary only to an extent inherent in the Due Process Clause of the Fourteenth Amendment, retroactive application of intervening judicial decisions altering statutory sentencing schemes is constitutional as long as the defendant had adequate notice of the potential sentence.  *Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).

The Ohio Supreme Court decision in *Foster* did not alter the sentencing range available under § 2929.14(A); it merely did away with the threshold requirement of judicial fact finding.  Petitioner had adequate notice of the maximum penalty he faced prior to committing his crimes.  As a consequence, Petitioner cannot complain that he did not receive "notice" or "fair warning" that his criminal conduct might have resulted in sentence he received.  See *U.S. v. Barton*, 455 F.3d 649,

654–55 (6th Cir.2006).

Every other Court in this district has rejected similar ex post facto challenges to retroactive sentencing under *Foster*. See *Gonzales v. Welch*, No. 3:08CV2269, 2010 WL 3222085 (N.D.Ohio Aug.13, 2010), (Gwin, J.); *McGhee v. Konteh*, No. 1:07CV1408, 2008 WL 320763 (N.D.Ohio Feb.1, 2008), (Nugent, J); *Cooper v. Hudson*, No. 3:07CV610, 2008 WL 2001282 (N.D.Ohio May 5, 2008), (Polster, J.); *Watkins v. Williams*, No. 3:07CV1296, 2008 WL 2484188 (N.D.Ohio June 17, 2008), (Adams, J.); *Keith v. Voorhies*, No. 1:06CV2360, 2009 WL 185765 (N.D.Ohio Jan.23, 2009), (Lioi, J.); *McKitrick v. Smith*, No. 3:08CV597, 2009 WL 1067321 (N.D.Ohio Apr.21, 2009), (Gaughan, J.); *Orwick v. Jackson*, No. 3:09CV0232, 2009 WL 4043352 (N.D.Ohio Nov.20, 2009), (Boyko, J.); *Newsome v. Brunsman*, No. 1:08CV1938, 2010 WL 319792, (N.D.Ohio Jan.20, 2010), (Zouhary, J.); *Ashley v. Gansheimer*, No. 1:08CV2556, 2010 WL 1924459 (N.D.Ohio May 12, 2010), (O'Malley, J.).

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Four with prejudice.

## VI.  CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE:  November 16, 2011

 *s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).